UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRADFORD W. KOHLBUSCH, | ) |
| | ) |
|     Plaintiff(s), | ) |
| | ) |
| vs. | )   Case No. 4:20-cv-00312-SRC |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of the Social Security | ) |
| Administration[1], | ) |
| | ) |
|     Defendant(s). | ) |

**Memorandum and Order**

Bradford W. Kohlbusch requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying his application for disability-insurance benefits and supplemental-security income under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385. The Court affirms the Commissioner's decision.

**I.    Procedural history**

Kohlbusch filed a Title II application for disability-insurance benefits and a Title XVI application for supplemental-security income on March 1, 2017. Tr. 219, 221. The Social Security Administration denied his applications on August 11, 2017. Tr. 140–44. Kohlbusch requested a hearing before an ALJ on September 11, 2017. Tr. 148. After a hearing on December 19, 2018, the ALJ denied Kohlbusch's applications in a decision dated April 26, 2019. Tr. 7–38. On January 13, 2020, the Appeals Council denied Kohlbusch's request for review. Tr. 1–5. Thus, the ALJ's opinion stands as the final decision of the Commissioner.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Kilolo Kijakazi for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. Decision of the ALJ

The ALJ determined that Kohlbusch had the severe impairments of obesity, type 2 diabetes mellitus, peripheral neuropathy, erythrocytosis (a condition in which the body makes too many red blood cells), bipolar disorder, and post-traumatic stress disorder (PTSD). Tr. 12. The ALJ found that Kohlbusch does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13. After considering the entire record, the ALJ assessed a residual functional capacity (RFC) for light work with certain limitations. Tr. 14–15. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ assessed the following RFC:

> [C]laimant has the residual functional capacity to perform light work . . . except lift up to 20 pounds occasionally; lift/carry up to 10 pounds frequently. He can stand/walk for about six hours and sit for up to six hours in an eight-hour work day, with normal breaks. He can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. He can never balance as defined by the Dictionary of Occupational Titles. He can occasionally stop, kneel and crouch, but never crawl. He can occasionally overhead reach using his bilateral upper extremities. He should avoid concentrated exposure to extreme heat and humidity. He should avoid exposure to unprotected heights and exposure to hazardous machinery. His work is limited to simple, routine and repetitive tasks. He should have no interaction with the public. He should have only occasional interaction with co-workers and supervisors.

Tr. 14–15. The ALJ found that jobs exist in significant numbers in the national economy that Kohlbusch can perform, including work as a photocopy machine operator, price marker, and mail sorter. Tr. 31. The ALJ concluded that Kohlbusch was not disabled. Tr. 31. Kohlbusch appeals. Doc. 1.

## III. Legal standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains

the "residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011).  While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment— and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (emphasis added).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner

4

finds the claimant disabled.  *Id.*  At step five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision.  42 U.S.C. §§ 405(g); 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "[T]he threshold for such evidentiary sufficiency is not high."  *Id*.  Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016).  The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  *Id*.  The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016).  The Eighth Circuit explained that "[w]e defer heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Hurd*, 621 F.3d at 738) (internal quotations omitted).

### IV. Discussion

As noted above, the ALJ determined that Kohlbusch retains the RFC to perform light work with certain limitations and that he can perform work that exists in significant numbers in the national economy.  Tr. 14–15, 31.  Kohlbusch argues that the Court should remand because

the ALJ's step-four RFC determination was inconsistent with the ALJ's step-three findings and because the ALJ failed to properly evaluate the medical-opinion evidence.  Doc. 14 at 3.

> **A.     The ALJ's step-four RFC determination was consistent with the ALJ's step-three findings**

Kohlbusch argues that the ALJ's RFC determination limiting him to "simple, routine, and repetitive" tasks failed to account for the ALJ's step-three finding that he had a moderate limitation in concentration, persistence, and pace.  Doc. 14 at 3–8.  Kohlbusch asserts that the ALJ "failed to apply the proper legal standard" because the RFC determination "failed to include any limitations from moderate deficiencies in [concentrating, persisting, or maintaining pace]." *Id.* at 3 (citing *Newton v. Chater*, 92 F.3d 688, 694–95 (8th Cir. 1996)).  Kohlbusch claims that the ALJ committed reversible error by failing to address his moderate limitations in concentration, persistence, or pace through the RFC determination.  *Id.* at 8.

At step three, the ALJ considered the medical severity of Kohlbusch's mental impairments.  Tr. 13.  The ALJ assessed a moderate limitation in Kohlbusch's ability to concentrate, persist, or maintain pace.  Tr. 13.  *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  The ALJ based this finding on Kohlbusch's testimony regarding his functional limitations as well as the available medical evidence.  Tr. 13–14.  At step four, the RFC assessment, the ALJ concluded that Kohlbusch is limited to performing "simple, routine and repetitive tasks."  Tr. 14–15.  This RFC mirrored the hypothetical that the ALJ posed to the vocational expert during the hearing on December 19, 2018.  Tr. 78–80.

Kohlbusch's argument lacks merit.  First, Kohlbusch misunderstands the relationship between the ALJ's step-three analysis of mental functioning and the step-four RFC determination.  As the Eighth Circuit recently explained: "the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of

6

review precludes us from labeling findings as inconsistent if they can be harmonized." *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006)) ("Each step in the disability determination entails a separate analysis and legal standard."). In *Chismarich*, the Eighth Circuit considered whether an ALJ erred by not including more-specific limitations in his RFC determination after finding moderate limitations in three areas of mental functioning in the step-three analysis, including a limitation in concentration, persistence, or pace. *Id.* at 980. The court deemed an RFC prescribing "work at a normal pace without production quotas" sufficient to account for the claimant's moderate limitation in concentration, persistence, or pace. *Id.* The court concluded there was "nothing inconsistent with the ALJ's separate analyses at the different steps in this case." *Id.*

Here, the Court finds no inconsistency between the ALJ's step-three finding that Kohlbusch has a moderate limitation in concentration, persistence, or pace and the ALJ's step-four RFC determination. Like in *Chismarich*, 888 F.3d at 980, Kohlbusch's moderate limitation in the area of concentration, persistence, or pace is adequately reflected in the RFC limitation to "simple, routine and repetitive tasks." Tr. 14–15. This Court may not find the ALJ's step-three and step-four findings inconsistent if they can be "harmonized." *Id.* The Court has no difficulty in harmonizing the ALJ's findings here. *See Goudeau v. Saul*, 2020 WL 7023936, at *5 (E.D. Mo. Nov. 30, 2020) (claimant's moderate limitation in the area of concentration, persistence, or pace was "adequately reflected in the RFC limitation to repetitive tasks and exclusion of work involving an assembly line or conveyor belt.").

Second, Kohlbusch's argument runs contrary to caselaw in the Eighth Circuit. The Eighth Circuit has held multiple times that a claimant's restriction to "simple, routine, and repetitive tasks" is sufficient to account for a moderate limitation in concentration, persistence,

7

or pace. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001); *Chismarich*, 888 F.3d at 980. In *Howard*, the Eighth Circuit held that an ALJ's hypothetical posed to a vocational expert regarding simple, routine, and repetitive work was sufficient to fully account for the claimant's limitation in concentration, persistence, or pace. 255 F.3d at 582. And, as already discussed, the Eighth Circuit found in *Chismarich* that an RFC restricting a claimant to "work at a normal pace without production quotas" was consistent with the claimant's moderate limitation in concentration, persistence, or pace. 888 F.3d at 980.

This Court has already rejected Kohlbusch's exact argument on multiple occasions. In *Goudeau*, 2020 WL 7023936, at \*5, the Court was unpersuaded by plaintiffs' citation to *Newton v. Chater*, 92 F.3d at 694–95. The Court held that a claimant's moderate limitation in concentration, persistence, or pace was entirely consistent with an RFC restriction to "simple, routine, repetitive tasks." *Goudeau*, 2020 WL 7023936, at \*5; *see also Gregory v. Saul*, 2020 WL 6708539, at \*6–7 (E.D. Mo. Nov. 16, 2020) (Fleissig, J.) (same); *Gonzalez v. Saul*, 2020 WL 1873410, at \*3–4 (E.D. Mo. April 15, 2020) (Limbaugh, J.) (same). Moreover, district courts in the Eight Circuit have consistently held that an RFC restriction to "simple and routine" tasks adequately accounts for a claimant's moderate limitations in concentration, persistence, or pace. *See Salkic v. Saul*, 2020 WL 805868, at \*3 (E.D. Mo. Feb. 18, 2020) (Judge Autrey) (collecting cases).

Kohlbusch argues that *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996), requires the Court to reverse and remand. Doc. 14 at pp. 3–4. In *Newton*, the Eighth Circuit considered whether a hypothetical the ALJ posed to the vocational expert adequately accounted for the claimant's undisputed mental limitations in concentration, persistence, or pace. *Id.* at 695. The ALJ's hypothetical "described a person with a minimal ability to read and write, a borderline range of

8

intelligence, a ninth or tenth grade education, an inability to perform highly skilled or technical work, a capacity for simple jobs, and a demonstrated ability to control his drinking problem." *Id.* at 694. The Eighth Circuit held that this hypothetical did not adequately account for the claimant's deficiencies of concentration, persistence, or pace. *Id.* at 695.

*Newton* is easily distinguishable. First, the ALJ's hypothetical to the vocational expert and the RFC determination in this case adequately accounted for Kohlbusch's mental limitation by restricting him to work involving "simple, routine and repetitive tasks." Tr. 14–15, 78–80. *See Goudeau*, 2020 WL 7023936, at *5; *Gregory*, 2020 WL 6708539, at *6–7; *Gonzalez*, 2020 WL 1873410, at *3–4. In contrast, the *Newton* hypothetical included no limitations addressing the claimant's deficiencies in concentration, persistence, or pace. 92 F.3d at 694. This distinction is dispositive. *See Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (holding that a hypothetical restriction including "scantly more" than the *Newton* hypothetical sufficiently described deficiencies of concentration, persistence, or pace).

Second, as *Gonzalez* explains, *Newton's* holding was limited to "the narrow issue of that claimant's habit-based problems (due to his alcoholism) as opposed to skills-based problems." *Gonzalez*, 2020 WL 1873410, at *3. *Gonzalez* explained that "cases since *Newton* demonstrate its limited reach." *Id.* at *4 (discussing *Howard*, 255 F.3d at 582 and *Scott v. Berryhill*, 855 F.3d 853, 858 (8th Cir. 2017) (upholding an RFC limiting the complexity of tasks to "those that can be learned and performed by rote" as adequately accommodating the claimant's limited concentration)).

Kohlbusch's brief does not acknowledge *Chismarich* or *Howard* nor even attempt to distinguish his situation in any way from these cases. Doc. 14 at 3–8. The Court holds that the

9

ALJ's step-four RFC determination adequately accounted for the ALJ's step-three findings; therefore the ALJ did not err.

> **B.     The ALJ afforded appropriate weight to the medical opinions of Dr. Jones and Dr. Spencer**

In determining whether the claimant is disabled, ALJs must consider all medical opinions in the record. 20 C.F.R. §§ 404.1527(b), 416.927(b). The Commissioner's regulations provide that, for claims filed on or before March 27, 2017, the guidelines for considering medical opinions under 20 C.F.R. §§ 404.1527, 416.927 apply. Under 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), a treating source's opinion may receive controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." If the ALJ does not give the treating source's opinion controlling weight, the ALJ must "apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion." *Id.* The ALJ "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's medical opinion." *Id.*

When the ALJ does not give an opinion controlling weight, ALJs weigh medical opinions, whether by treating or consultative examiners, based on: (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). "While an

ALJ must consider all of the factors set forth in 20 CFR § 404.1527(d),[2] he need not explicitly address each of the factors." *Derda v. Astrue*, 2011 WL 1304909, at *10 (E.D. Mo. 2011) (collecting cases).

### 1. Dr. Jones's medical opinion

Kohlbusch argues that the ALJ erred in failing to give controlling weight to Dr. Georgia Jones's opinion regarding Kohlbusch's mental impairments. Doc. 14 at 8–10. Dr. Jones is Kohlbusch's treating psychiatrist, and she filled out a two-page medical-source statement on November 26, 2018. Tr. 2295–97.

Dr. Jones opined that Kohlbusch had a depressed mood, diminished interest in almost all activities, appetite disturbance with weight change, sleep disturbances, psychomotor agitation or retardation, decreased energy, feelings of guilt/worthlessness, difficulty concentrating or thinking, fatigue, and irritability. Tr. 2296. Dr. Jones stated that Kohlbusch's prognosis was poor due to his complex medical problems. Tr. 2296. She opined that Kohlbusch's condition was expected to last at least 12 months, and that his condition exacerbated his pain and other physical symptoms. Tr. 2296. Dr. Jones indicated that Kohlbusch would have difficulty working a full-time job due to concentration problems, that he would be off-task more than 20 percent of the time, that he would need redirection at least one or two times a day, and that he would miss work more than three times a month. Tr. 2296–97. She further opined that Kohlbusch had extreme difficulties in maintaining concentration, persistence, or pace; and marked impairments in his ability to understand, remember, or apply information; interact with others; and adapt or manage himself. Tr. 2297.

---

[2] The 2011 version of 20 C.F.R. § 404.1527, at issue in *Derda*, listed the factors for ALJs to consider in determining weight to give medical opinions in section (d). The regulation has been amended and the latest version lists the factors in section (c).

The ALJ considered Dr. Jones's opinion in the medical-source statement but did not give it controlling weight. Tr. 29–30. The ALJ explained that Dr. Jones' opinion regarding Kohlbusch's limitations was "not supported in Dr. Jones' contemporaneous office or progress notes." Tr. 30. The ALJ reasoned that Dr. Jones's own examinations did not reveal "the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." Tr. 30. The ALJ noted that Dr. Jones "relied quite heavily" on Kohlbusch's subjective reports of symptoms and limitations, which were inconsistent with the objective medical records and findings. Tr. 30.

The ALJ observed that Dr. Jones began treating Kohlbusch in April 2018, seven months before issuing her medical-source statement. Tr. 29. The ALJ pointed out that Dr. Jones's medical-source statement included several symptoms that did not appear anywhere else in her treatment notes. Tr. 29. She asserted that Kohlbusch experienced appetite disturbance with weight change, even though her own treatment notes reported that he was eating and drinking well. Tr. 29. She asserted that Kohlbusch had observable psychomotor abnormalities, but the treatment notes did not indicate any psychomotor issues. Tr. 29. And though she alleged that Kohlbusch had difficulty concentrating, the treatment notes state that he consistently presented with normal attention and concentration. Tr. 29.

The Court finds that the ALJ properly considered all of the regulatory factors in determining not to give controlling weight to Dr. Jones's medical opinion in the medical-source statement. A treating physician's opinion will be given controlling weight "if, and only if, it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 986 (8th Cir. 2018) (quoting *Johnson v. Astrue*, 628 F.3d 991, 994 (8th Cir. 2011)); *see also*

20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). The more relevant evidence and supporting explanations a source provides for an opinion, the more persuasive the opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). And the more consistent an opinion is with the record as a whole, the more persuasive it is. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ ultimately discounted Dr. Jones's opinion because it was inconsistent with other substantial medical evidence in the record. *See Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) ("It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013–14 (8th Cir. 2000)); *see also Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005) (finding that inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a treating physician's opinion).

As described by the ALJ, Dr. Jones's opinion conflicted with her own treatment notes. On April 27, 2018, Dr. Jones' initial examination notes indicate that Kohlbusch's mental status examination was largely normal, with normal memory, behavior, psychomotor activity, and speech, as well as "good" attention. Tr. 2729. Kohlbusch's appearance was clean and he was appropriately dressed. Tr. 2729. His behavior was pleasant and cooperative. Tr. 2729. His affect was reactive, and his thought content and rate were normal. Tr. 2729. Nevertheless, Dr. Jones indicated that Kohlbusch's severity was an eight on a scale of 1-to-10, with ten being the most severe. Tr. 2730. At subsequent appointments, Kohlbusch reported a variety of situational problems, including his son shooting himself with a pellet gun, his son's legal troubles, his wife's health problems, and his in-laws moving into the house. Tr. 2733, 2737, 2742, 2766,

13

2774.  Dr. Jones continued to record essentially normal mental-status examination findings during this time.  Tr. 2733-34, 2738-39, 2742-43, 2748, 2766, 2774, 2809.

Dr. Jones's medical-source statement also stated that Kohlbusch had psychomotor agitation or retardation, but such findings are entirely absent from her examination findings.  Tr. 2296, 2733–34, 2738–39, 2742–43, 2748, 2766, 2774, 2809.  Dr. Jones opined that Kohlbusch had difficulty concentrating or thinking, but her examination reports consistently indicate good attention, intact memory, and a normal thought process.  Tr. 2296, 2733–34, 2738–39, 2742–43, 2748, 2766, 2774, 2809.  Because Dr. Jones' medical-source statement was inconsistent with her own examination findings, the ALJ properly discounted it.  Tr. 29.

The ALJ observed that Dr. Jones's opinion was inconsistent with the findings of other treating sources in the record.  Tr. 30.  During an examination on April 25, 2017, with Bingzhong Chen, M.D., Kohlbusch had a normal fund of knowledge, attention span, concentration, short term recall, recent and remote memory, fluency, comprehension, and insight.  Tr. 1322.  His awareness of current events, past history, and vocabulary was normal, as was his language.  Tr. 1322.  There was no evidence of psychomotor agitation or slowing.  Tr. 1322.  At subsequent appointments on October 31, 2017, April 30, 2018, and October 30, 2018, with Yongzhong Wei, PA, Kohlbusch was fully oriented, and he had a normal attention span and concentration, recall, recent, and remote memory, and speech.  Tr. 1341, 1364, 2313.  Again, Kohlbusch exhibited no signs of psychomotor agitation or slowing.  Tr. 1342, 1364, 2313.  At appointments on December 28, 2018, January 4, 2019, and January 9, 2019, Heather Hill, M.D., observed normal attention/concentration, normal speech, intact cognition, and a blunted-but-full range of affect.  Tr. 2791, 2815, 2832.  These relatively normal findings by other examining and treating sources in the record further supported the ALJ's decision to discount Dr. Jones's

14

opinion. Tr. 30. *See Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (the ALJ may discount a treating physician's opinion if it is inconsistent with substantial evidence in the record, including the results of contemporaneous examinations).

Dr. Jones's opinion was also largely inconsistent with the findings of the consultative examiners in the record. Kohlbusch saw Thomas J. Spencer, Psy.D., and Michael J. Luley, M.Ed., on October 3, 2017. Tr. 922–25. As the ALJ observed, Kohlbusch was cooperative and his motor behavior was within normal limits during these examinations. Tr. 20, 924. Kohlbusch's thought content was intact, as was his immediate and recent memory. Tr. 21, 924. His concentration was described as "good." Tr. 21, 924. These findings undermine Dr. Jones' opinion that Kohlbusch had abnormal psychomotor activity, extreme deficits in concentration, and marked deficits in understanding, remembering, or applying information. Tr. 2296–97. It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians. *See Kirby*, 500 F.3d at 709. The ALJ properly discounted Dr. Jones's opinion because it lacked support from her own examination findings and conflicted with the findings of other treating and examining providers in the record. Tr. 29–30.

In addition, medical opinions that take the form of "checked boxes, circled answers, and brief fill-in-the-blank responses" without additional evidence or elaboration are conclusory and possess "little evidentiary value" for an RFC determination. *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (citing *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)). These kinds of medical opinions, by themselves, do not amount to substantial evidence. *See O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1983) ("Because of the interpretive problems inherent in the use of forms such as the physical capacities checklist, our Court has held that while these forms are admissible, they are entitled to little weight and do not constitute "substantial

evidence" on the record as a whole."); *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) ("[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration."); *see also Swigert v. Astrue*, 226 Fed. App'x 628 (8th Cir. 2007) ("A treating physician's checkmarks on [a medical source statement] form may be discounted if they are contradicted by other objective medical evidence in the record.").

Dr. Jones's opinion simply checks boxes, circles answers, and fills in blanks on a generic "medical source statement" form, without further elaboration. Tr. 2295–97. Dr. Jones's opinion is entirely a set of checked boxes, circled answers, and filled-in blanks, indicating that Kohlbusch would be off-task for more than 20% of his day, would require redirection one-to-two times per day, and would be absent more than three times per month, among other limitations. Tr. 2296–2297. The ALJ did not need to assign great weight to such an opinion. *See Wallenbrock v. Saul*, 2021 WL 1143908, at *6–7 (E.D. Mo. March 25, 2021).

Kohlbusch argues that the ALJ improperly discounted Dr. Jones's opinion merely because her opinion relied on Kohlbusch's subjective reports of his symptoms and limitations. Doc. 14 at 9–10. He cites *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003), urging that "an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Id.* at 10.

The Court finds this argument unpersuasive. First, the ALJ had previously discounted Kohlbusch's subjective complaints about his symptoms, explaining at length that they were inconsistent with the objective medical evidence and his own behavior during the relevant period. Tr. 27–28. The ALJ found that Kohlbusch's failure to seek mental-health treatment until 2018, the general success of medication and counseling in controlling his psychiatric symptoms, and his repeated failures to follow his doctors' medical advice were "more consistent with a

16

minimal, tolerable, and nondisabling degree of alleged symptoms." Tr. 27–28. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."). Then, while considering Dr. Jones's opinion, the ALJ observed that her opinion was unsupported by her own treatment notes and that she "relied quite heavily on the subjective report of symptoms and limitations provided by [Kohlbusch] which is not supported by and consistent with the objective medical records and findings." Tr. 30.

Second, Dr. Jones did not indicate on the medical-source statement to what extent she relied on Kohlbusch's subjective complaints, as opposed to her clinical findings. Tr. 2296–97. She provided conclusory answers, with no explanation or supporting documentation. Therefore, the ALJ could properly assign her opinion less weight. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("[T]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight ALJs will give to that opinion."); *see also Wallenbrock*, 2021 WL 1143908, at *5.

The Court finds that good reasons and substantial evidence on the record as a whole support the ALJ's decision to discount Dr. Jones's opinion. *See Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016). Kohlbusch argues that certain medical evidence supports Dr. Jones's opinion, but even if the Court found substantial medical evidence in the record supporting Dr. Jones's opinion, it cannot remand simply because it "would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion." *Id.* at 728 (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)) and *Goff*, 421 F.3d at 789 ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the

17

ALJ's decision.")). Rather, this Court must affirm if the ALJ's finding "falls within the available zone of choice[.]" *Schouten v. Berryhill*, 685 F. App'x 500, 501 (8th Cir. 2017) (citation omitted). Here, for the reasons outlined above, the ALJ found inconsistencies between Dr. Jones's opinion and the other medical evidence in the record, including her own treatment notes, and substantial evidence supports the ALJ's finding. Because the ALJ's finding "falls within the available zone of choice," the ALJ permissibly afforded Dr. Jones's opinion little weight.

### 2. Dr. Spencer's medical opinion

Kohlbusch briefly argues that the ALJ failed to articulate what weight he afforded the October 2017 opinion of Dr. Spencer, a consultative examiner. Doc. 14 at 11–12. Dr. Spencer is a psychologist who examined Kohlbusch in both June and October 2017. Tr. 28–29, 916, 922–25, 892–95.

Dr. Spencer opined in October 2017 that Kohlbusch "has a mental illness, one which interferes with his ability to engage in employment suitable for his age, training, experience, and/or education. The duration of the disability will exceed 12 months, but with appropriate treatment and compliance, prognosis likely improves." Tr. 925. The ALJ acknowledged Dr. Spencer's October 2017 opinion and stated that "the findings made by him are given little evidentiary weight" because they were inconsistent with Dr. Spencer's own observations and the objective medical findings. Tr. 29. The ALJ further noted that Dr. Spencer gave his opinion that Kohlbusch was "disabled" in the context of eligibility for Medicaid benefits and that such determinations are not binding on the issue of disability for purposes of benefits under the Social Security Act. Tr. 29, 922–25. *See Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014).

The Court observes that the opinion of a non-treating source is never entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). And a medical opinion that a

18

claimant is "disabled" is not entitled to any significant weight. *See* 20 C.F.R. § 404.1527(d)(3); 416.927(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . ."). The ALJ also explained that Dr. Spencer's opinion was not supported by the fairly normal findings described in his own report and was inconsistent with the mental status findings described by the other providers in the record. Tr. 29.

The Court finds that the ALJ adequately articulated the weight afforded to Dr. Spencer's October 2017 opinion and properly considered the regulatory factors in assigning little weight to the opinion.

## V.     Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007)). Having found that substantial evidence supports the ALJ's conclusions and that the ALJ correctly applied the legal standards, this Court affirms the ALJ's decision.

Accordingly, the Court dismisses Kohlbusch's Complaint with prejudice. Doc. 1. A separate judgment will accompany this Memorandum and Order. The Court directs the Clerk of Court to amend the case name and caption to reflect the substitution of Kilolo Kijakazi as Defendant in this suit.

So Ordered this 17th day of September 2021.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**